HOME FIRE INSURANCE COMPANY, OF MCALESTER, OKLAHOMA,
v. STANCELL.

Opinion delivered April 25, 1910.

1.  INSURANCE—PAYMENT OF PREMIUM—AUTHORITY OF AGENT.—An insurance agent authorized to make terms of insurance, to issue policies by countersigning and delivering same, and to collect the premiums therefor, is authorized to accept the promissory note of a third party in lieu of the payment of a premium.  (Page 580.)
2.  SAME—SUFFICIENCY OF PAYMENT.—Where an agent having authority to do so accepted the notes of a third party in lieu of a premium, such payment was binding on the insurance company, notwithstanding the notes stipulated that the insurance policy should be void as long as the notes remained partly due and unpaid, if such stipulation was not contained in the policy.  (Page 581.)
3.  SAME—FORFEITURE FOR NONPAYMENT OF PREMIUM—WAIVER.—An insurance company will be held to have waived a forfeiture on account of failure of the insured to pay the premium notes where its conduct led the insured to believe that such notes would be presented to the insured for payment, and it failed to present them.  (Page 582.)
4.  SAME—DAMAGES AND ATTORNEY'S FEES.—Acts 1905, p. 307, providing for 12 per cent. damages and for an attorney's fee to be allowed against fire, life, health or accident insurance companies where they fail to pay their losses within the time specified in the policy, has no application to an action against a cyclone insurance company for a loss caused by cyclone.  (Page 582.)
5.  SAME—EFFECT OF AGREED STATEMENT.—An agreed statement, in a suit against a cyclone insurance company, that if no defense was made to the suit the recovery would be for certain named amounts for the loss, damages and attorney's fees will not be held to preclude the court from determining whether the insurance company was liable for the damages and attorney's fees.  (Page 583.)

Appeal from Cleburne Circuit Court; *Garner Fraser,* Special Judge; reversed in part.

*Walter D. Jacoway,* for appellant.

When a policy of insurance stipulates that it should be void during the time the policy note or any part of it should remain unpaid, after becoming due, the insurer is relieved from liability during the continuance of such default. 74 Ark. 507; 85 Ark. 337; 75 Ark. 25. The burden of proof is on the insured to show a waiver of forfeiture by the insurer. 67 Ark. 584; 13 Ency. Ev. 539, 1020. And the proof must be clear and convincing. 13 Ency. Ev. 1020, and 29 Ency. Ev. 1105.

*U. S. Bratton*, for appellee.

If agreed to by the parties, payment may be made by check or note. 133 N. C. 179; 9 How. 390; 46 Atl. 1005; 59 Neb. 451; 81 N. W. 312; 165 N. Y. 608. A draft on a third person, if accepted and received by the insurer, constitutes payment of the premium. When the insurer is to look to a third person for the payment of the premium, it will be treated, so far as the insured is concerned, as fully paid. 72 Miss. 333. The findings of the court are as conclusive as the verdict of a jury. 56 Ark. 621; 57 Ark. 93; *Id.* 483; 90 Ark. 372; *Id.* 375; *Id.* 494; *Id.* 512; 88 Ark. 587; 84 Ark. 359.

FRAUENTHAL, J. This was an action instituted by Mrs. E. M. Stancell, the plaintiff below, to recover upon a policy of insurance, by the terms of which the defendant insured the plaintiff's house against loss by cyclone. In its answer the defendant pleaded that notes had been executed for the premium of the insurance, which were not paid at maturity, and that thereby the policy was avoided.

The cause was tried by the court sitting as a jury, who made a finding of fact and of law in favor of plaintiff; and a judgment was entered accordingly. From this judgment the defendant prosecutes this appeal.

The defendant is a foreign insurance company, and W. L. Burt was its agent at Heber, Ark., and issued the policy of insurance on the property situated at that place. This agent was authorized to make terms of insurance, to issue such policies as are involved in this case by countersigning and delivering same, and to collect the premiums given therefor. He solicited the insurance of the property from plaintiff; and, after they agreed upon the amount of the policy and the premium, he wrote the policy at his office, and returned to plaintiff's house to deliver same to her. He also brought three notes, which he had drafted for the premium, and which he had expected her to execute. When he arrived at the plaintiff's house, he found that she was not there, but found her husband, A. C. Stancell. He told Mr. Stancell that he had the policy duly executed, and wanted the plaintiff to sign the notes. Mr. Stancell told him that he would sign the notes himself if he would accept him. The agent testified that he then agreed to accept the notes of A. C. Stancell, and that the notes were then signed by A. C.

Stancell, and that he "accepted them in payment of the premium." The notes were dated October 10, 1908, and were due respectively on the 16th day of November and December, 1908, and January 16, 1909.

In the notes it was stated that they were given "for premium on my insurance applied for," and if not paid at maturity the contract for insurance shall be null and void, so long as the notes or any part of same remained due and unpaid. The policy was issued to and insured Mrs. E. M. Stancell; and it does not appear from the testimony that there was any provision in the policy that same should be avoided by the failure to pay the notes, nor that the plaintiff was in any way a party to said notes. At the time of the execution of said notes and continuously to the time of the trial of the case A. C. Stancell was perfectly solvent, but the plaintiff was not. The notes were forwarded by the agent to the defendant, and when the first note became due it notified A. C. Stancell by mail of its maturity, and asked that payment be sent to it at its home office at McAlester, Okla., at which place the notes stated that they were payable. Thereupon A. C. Stancell wrote to defendant that it was his understanding that the notes were to be paid to the agent at Heber, and that he did not care to send payment to the home office; and that, if defendant would not send the notes to its agent at Heber to be there paid, it could cancel the policy. Thereupon the defendant sent said first note to its agent at Heber with direction to collect, which he did. The defendant did not send the other two notes to its agent, and on this account they were not paid at the time of the loss, which occurred on April 29, 1909.

It is claimed by plaintiff that the premium for the policy was paid when the defendant's agent took and accepted the notes of a solvent third party in payment of such premium. And under the testimony adduced in this case we think this position is correct. The payment of the premium is ordinarily a condition necessary to the operation of a policy of insurance, and usually a provision to that effect is made in the policy. But a valid payment of the premium may be made by property or note or the obligation of another as well as by money; and if something other is accepted in lieu of money, the sole question to be determined is whether or not the same was accepted as

actual payment of the premium. Certainly, the company could make such agreement for the payment of the premium, and we think its agent had such authority under the evidence in this case. In the case of *American Employers' Liability Ins. Co.* v. *Fordyce,* 62 Ark. 562, this court quotes with approval the following from *Miss. Valley Ins. Co.* v. *Neyland,* 9 Bush 430: "A general agent of an insurance company whose business it is to solicit applications for insurance and receive first premiums has the right to waive the condition requiring payment in money and to accept the promissory note of the applicant or of a third party in lieu thereof, or to undertake to make payment to the company himself; and when the cash payment is actually waived in either of these modes, the contract binds the company, notwithstanding the recital in the policy that it is not binding until the first premium is paid in cash." Even if it had been shown in this case that the policy contained a provision avoiding it on the failure to pay the premium or the notes given therefor, the agent waived such provision by accepting as actual payment of the premium the notes of A. C. Stancell. This agent was authorized to make contracts of insurance, and to issue policies by countersigning and delivering same, and to collect the premiums. The general power thus given him also gave him authority to accept the notes of another in full payment of the premium, if it was done in good faith. This action by the agent bound the company. *Mutual Life Ins. Co.* v. *Abbey,* 76 Ark. 328; *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348; *Phoenix Ins. Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187; *Miller* v. *Life Ins. Co.,* 12 Wall. 285; 16 Am. & Eng. Ency. Law, 858.

The agent testified that A. C. Stancell was perfectly solvent, and that he accepted his notes in actual payment of the premium of the policy. This then became a payment of such premium, and the policy could not thereafter be avoided because the notes were not paid. The stipulations in the notes that "my insurance" should be null and void as long as the notes remained past due and unpaid would not have that effect. The notes were executed by A. C. Stancell, and the contract therein was only his contract; it was not the contract of the plaintiff. It is not shown that the policy, which was the only contract into which she entered, contained any provision avoiding it

upon the nonpayment of these notes. The provision to that effect in the notes of a third party were therefore nugatory. 2 May on Insurance, § § 345, 345e; *Dwelling House Ins. Co. v. Hardie,* 37 Kan. 674; *Union Central Life Ins. Co. v. Taggart,* 55 Minn. 95; 16 Am. & Eng. Ency. Law 865.

Furthermore, we are of opinion that the defendant waived its right, if it had any, to declare a fortfeiture of the policy by reason of a failure to pay the notes under the circumstances of this case. When the first note matured, the maker of the three notes wrote to defendant that he understood that the notes were to be sent to its agent, Burt, at Heber, to be collected by said agent at said place; and, in effect, asking that the notes should be sent to the agent at Heber to be by him presented for payment and collected. The defendant, in effect, by its conduct agreed to this; and in conformity with such agreement sent the first note to its agent at Heber for presentation for payment and collection; and it was promptly paid. By this conduct it led the maker of the notes to believe that it would send the other notes to the same place before payment thereof would be demanded or expected, and before any forfeiture of the policy would be insisted on. This it failed to do, and thereby it misled the maker. Refusal of payment of the notes was never made; on the contrary, the testimony shows that they would have been promptly paid at maturity if they had been presented at Heber, as the maker had a right to expect would be done on account of the actions and conduct of defendant.

"Forfeitures are so odious in law that they will be enforced only where it is by the clearest evidence shown that such was the intention of the parties. If the practice and conduct of the company and its course of dealing leads the insured to believe that by conforming to that course no forfeiture will be insisted on, the company will not be allowed to set up such forfeiture against one in whom their conduct has induced such belief." 2 May on Ins. § 361.

The circuit court rendered a judgment in favor of the plaintiff for the amount of the loss and also for twelve per cent. damages upon the amount of such loss and attorney's fees. These amounts for damages and attorney's fees were allowed under the provisions of the act of the General Assembly approved March 29, 1905 (Acts 1905, p. 307). But the provis-

ions of that act only apply in cases where the loss occurs and a fire, life, health or accident insurance company is liable therefor. It does not provide for the allowance of such damages and attorney's fees in case where the loss is caused by a cyclone, and a cyclone insurance company is liable therefor. The act is highly penal, and it should not be held to apply to any loss or company that is not therein expressly named. It therefore should not be held to apply to cases where the loss is caused by cyclone, and a cyclone insurance company is liable therefor.

It is urged by counsel for plaintiff that the court did not err in making these allowances, because in the agreed statement of facts it was provided that if no defense was made to the suit the recovery would be had for certain named amounts for the loss, damages and attorney's fees. But we think that the parties intended by said agreed statement of facts only to provide the amount that should be recovered on each item sued for in the event that the court should determine that the plaintiff was under the law entitled to recover such items.

We are therefore of the opinion that the court erred in allowing the amounts of said damages and attorney's fees, but that in all other respects the judgment is correct.

So much of the judgment as allows recovery for damages and attorney's fees is reversed, and the cause of action as to those items is dismissed; in all other respects the judgment is affirmed.

Battle and Hart, JJ., dissent.