PAUL M. REAGAN AND ANOTHER v. PHILADELPHIA LIFE INSURANCE COMPANY.[1]

December 4, 1925.

No. 24,796.

**Presumption rebuttable that first premium of life insurance policy was paid.**

1. The delivery to the insured of a policy of life insurance which contains no acknowledgment of the receipt of the first premium gives rise to a rebuttable presumption that the premium was paid or that the time of payment was extended, if in fact payment had not been made.

The evidence justified the jury in finding that the premium was not paid and the language of the policy negatived the authority of the agent who delivered the policy to extend the time of payment.

[1] Reported in 206 N. W. 162.

**Declaration of insured to medical examiner part of policy.**

2. The facts alleged in the answer and admitted in the reply precluded plaintiffs from asserting that the declaration made to the company's medical examiner, which was signed by the insured, was not part of his application for the policy.

**No error.**

3. There was no error in the instructions or in the rulings on the admission of evidence.

1. See Insurance, 32 C. J. p. 1131, § 235; p. 1138, § 244; p. 1204, § 335; Life Insurance, 37 C. J. p. 638, § 440.
2. See Pleading, 31 Cyc. p. 87.
3. See Stipulations, 36 Cyc. p. 1291.

---

1. See 14 R. C. L. pp. 968, 969; 3 R. C. L. Supp. p. 324.

Action in the district court for Ramsey county to recover upon a life insurance policy. The case was tried before R. D. O'Brien, J., and a jury which returned a verdict in favor of defendant. Plaintiffs appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*William Bauer* and *Kueffner & Marks*, for appellants.

*Morphy, Bradford & Cummins, Samuel Lipschultz, Duane, Morris & Heckscher* and *Edward J. Boughton*, for respondent.

LEES, C.

This action was brought on a life insurance policy, was tried by the court with a jury, and resulted in a verdict in favor of defendant. Plaintiffs made the usual alternative motion for judgment or a new trial, which was denied, and this appeal followed.

The application for the policy, identified in the record as Exhibit A, was taken by Louis Finkelstein, an agent of the company, and contains the following recital over the signature of the insured:

"I have this 15th day of July given to Louis Finkelstein, Agent, the sum of nothing, to be used in payment of the first annual premium on policy when issued by the company in accordance with this application."

On July 16 the insured took the required medical examination and signed an instrument designated as "Declarations Made to the Company's Medical Examiner" and identified in the record as Exhibit B. In that instrument these words appear in small type:

"The policy granted herefor shall not take effect until issued, delivered and the premium paid thereon to the Company or to an agent holding the premium receipt from the Company during my lifetime and while in good health."

Briggs died on August 22, 1923, from bodily injuries sustained on that day when he was struck by an automobile.

At the opening of the trial counsel for plaintiffs stated that the only issue was whether the first premium had been paid. To establish their case plaintiffs offered the policy in evidence and showed that it was found among Briggs' effects after his death. In their brief they state that photostatic copies of Exhibits A and B were also found among his effects, but the record does not show that these copies were offered in evidence. Upon this showing plaintiffs rested their case and defendant assumed the burden of establishing nonpayment of the premium. A recital of the evidence it introduced is unnecessary. It is enough to say that there was an abundance of evidence to justify the jury in finding that the premium was not paid.

Finkelstein's explanation of Briggs' possession of the policy was that, when the policy came from the home office, he took it to Briggs, who requested that it be left with him for examination; that he gave it to him for that purpose and retained the receipt for the premium which came with the policy; that thereafter he made repeated requests for payment of the premium and that a day or two before his death Briggs gave him a post-dated check for $15; that he did not accept the check in part payment of the premium and that the check was never cashed and the receipt for the premium was never delivered.

Upon this state of facts plaintiffs contend that Briggs' possession of the policy conclusively established payment of the premium.

The contention is based on the language of the policy and on certain provisions of the insurance code.

The policy does not expressly acknowledge the receipt of the first premium. The life of Briggs was insured "in consideration of the application for this policy and of the payment of sixty-seven and 02/100 dollars in advance and a like sum on the twenty-fourth day of July in each year thereafter."

Other provisions of the policy are these: A clause referring to payment of premiums, which reads:

"All premiums are payable in advance at the home office of the company or to an agent of the company upon delivery of a receipt signed by an executive officer of the company * * * and countersigned by said agent.

"A grace of one month shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force."

Another which reads:

"A copy of the written and printed application for this contract is attached hereto. This policy and application therefor, taken together, constitute the entire contract. No person except an executive officer of the company * * * has power to modify * * * this policy, to extend the time for paying a premium or to accept any note in payment therefor."

The outstanding facts are: (1) The application shows on its face that Briggs paid nothing when he applied for the policy; (2) the policy does not acknowledge receipt of the first premium; (3) the receipt for the premium was never delivered to Briggs; (4) the jury found that the premium was never paid; (5) if the jury believed Finkelstein's testimony, there never was an unconditional delivery of the policy to Briggs nor an acceptance of his post-dated check as a partial payment of the premium.

This court has held that where an insurance policy provides that it shall not be effective until the first premium is paid, it does not take effect, even though delivered, until this provision is complied

with.   Union C. L. Ins. Co. v. Taggart, 55 Minn. 95, 56 N. W. 579,
43 Am. St. 474; Kilborn v. Prudential Ins. Co. 99 Minn. 176, 180, 108
N. W. 861.   The policy here in question does not contain such a
provision unless Exhibit B is part of the contract.   The statute re-
quires all premiums to be paid in advance.   G. S. 1923, § 3402.   But
it is held that payment in cash may be waived.   Coughlin v. Re-
liance L. Ins. Co. 161 Minn. 446, 201 N. W. 920.   Policies not in
the form prescribed by G. S. 1923, § 3399, must contain a provision
that all premiums shall be payable in advance either at the home
office of the company or to an agent of the company upon delivery
of a receipt signed by one or more of the officers who shall be named
in the policy and countersigned by the agent, and may contain a
provision that the policy itself shall be a receipt for the first prem-
ium.   Subdivision 1, § 3402, G. S. 1923.   This policy does not con-
tain an acknowledgment of the receipt of the first premium.   The
language of subdivision 1, § 3402, with the exception of the last
two lines, is printed in the policy.

It is a general rule that, if the policy is delivered without pay-
ment of the premium, the insurer will be presumed to have extended
credit therefor.   Cooley Briefs on Law of Ins. Vol. 6 Supp. §§ 482(i),
507 (f).   In Gardner v. United Surety Co. 110 Minn. 291, 125 N. W.
264, 26 L. R. A. (N. S.) 1004, this court said:

"A duly signed policy issued by the defendant was after the death
of the insured found amongst his papers.   This together with the
admitted facts of its genuineness, established a prima facie pre-
sumption that it was in full force and effect; and unless the defend-
ant by sufficient evidence overcame that presumption the jury were
justified in finding the policy to be a valid obligation of the de-
fendant."

In Kollitz v.Equitable Mut. Fire Ins. Co. 92 Minn. 234, 99 N. W.
892, the court said:

"The policy   *   *   *   having been delivered to plaintiff without
a prepayment of the premium, defendant must be taken   *   *   *   to
have extended credit for such payment, and the policy was, not-

withstanding the fact that the premium had not been paid, in full force at the time of the fire."

Neither of the two cases cited dealt with a policy of life insurance, and it is to be borne in mind that the statutes relative to life insurance must be read in conjunction with the policy in determining the rights of the parties.

Plaintiffs' brief cites cases holding that, if the policy recites that the premium has been paid, the acknowledgment is conclusive insofar as it is necessary to fix the liability of the insurer. Many such cases are collected in Cooley's Briefs on the Law of Insurance, Vol. 6 Supp. § 509·(g). If the policy was in one of the forms prescribed by G. S. 1923, § 3399, these cases would have to be considered, but, because it contains no acknowledgment of the receipt of the premium, it is unnecessary to determine whether the rule they announce is applicable here.

The purposes of the statutory provisions relating to life insurance were fully stated in the opinion of the Chief Justice in Coughlin v. Reliance Life Ins. Co. supra. One purpose is to prevent discriminations which are contrary to public policy, and so it was held that a life insurance company is bound to demand payment of the first premium in advance. We are not at liberty to infer that Finkelstein violated the statute by delivering the policy without requiring payment of the premium in advance.

Leaving out of consideration Exhibit B and looking to the policy and the statute to ascertain the rights of the parties, we think that the delivery of the policy merely gave rise to a rebuttable presumption that there had been a payment of the first premium or an extension of time for the payment thereof, if in fact it had not been paid. If there was an extension, the acts of the agent Finkelstein brought about that result, but the last provision of the policy above quoted conclusively negatives the existence of authority on his part to extend the time of payment; that could be done only by an executive officer of the company.

Plaintiffs are in no position to urge that Exhibit B was not a part of the contract of insurance. Copies of Exhibits A and B were

attached to the answer and made part thereof, and the reply contains this admission: "Exhibits A and B attached to said amended answer * * * are true and correct copies of the application for the insurance herein in question."

We need not consider that provision of section 3416, G. S. 1923, which requires every printed portion of the policy and attached papers to be printed in type not smaller than ten-point. That section relates to accident and health insurance and not to life insurance.

One of the errors assigned is directed at an instruction to the jury, in effect that Exhibit B was part of the contract of insurance. We need not determine whether this was correct, for the court repeatedly told the jury that under the pleadings, the evidence and a stipulation of the parties, the only question to be determined was whether or not the first premium had in fact been paid. The jury were told that unless the defendant, by a fair preponderance of the evidence, had shown that Briggs failed to pay the premium, plaintiffs were entitled to a verdict. No fault is or could be found with this instruction.

With reference to the $15 check, the jury were told that it was not such a payment of the premium as the policy required and that a verdict in plaintiffs' favor could not be returned unless they found that the full premium had been paid. No exception to this instruction was taken when it was given or in the notice of motion for a new trial, hence error cannot be assigned.

Other errors assigned relate to rulings on the admission of evidence. With one exception these assignments are not discussed in appellant's brief. The exception relates to an objection to the reading of the testimony of certain witnesses for defendant given by deposition, on the ground that the witnesses were not sworn as required by the statutes of this state. The record shows that after the depositions were filed counsel entered into a stipulation waiving any defect or informality in the taking of the depositions, hence there was no error in overruling the objection.

Order affirmed.