### ROGERS v. GREAT–WEST LIFE ASSUR. CO.

Civ. No. 782.

District Court, D. Minnesota, Fourth Division.

Dec. 10, 1942.

Charles F. Noonan (of Fletcher, Dorsey, Barker, Colman & Barber), of Minneapolis, Minn., for defendant in support of said motion.

Robert Cowling and Thompson, Hessian & Fletcher, all of Minneapolis, Minn., in opposition thereto.

NORDBYE, District Judge.

It would appear that all of the salient and controlling facts have been stipulated. The question presented to the court, therefore, is whether such agreed facts will sustain a finding that there was a delivery of the policy in question to the applicant and whether there was a payment of the first premium on the policy to the defend-

ant as the contract between the parties provided. The application for insurance was made by one Bertram Harlan Rogers. The plaintiff herein was designated as the beneficiary in the policy to be issued. The application contained the following provision: "It is hereby declared and agreed * * * that a policy issued pursuant to this application shall not take effect until the same is delivered and the first premium thereon paid to the Company, no change having taken place in the insurability of my life subsequent to the completion of this application."

There is no ambiguity in this language. Its terms are simple, plain and direct. It follows, therefore, that the policy to be issued would not become operative until, first, the policy was delivered, and second, the first premium had been paid.

It appears from the stipulation that, some time in March, 1942, a policy issued by the defendant company in pursuance of the application made by Rogers was sent to the local agent of the defendant company with whom Rogers had negotiated the insurance. This policy was exhibited to the applicant, but it was not accepted because error had been made with reference to his age and the premium payment schedule was not acceptable. It does appear that, notwithstanding the decision to return the policy to the Home Office, Rogers offered to give the agent a check for the premium, but the agent expressed doubt as to his ability to compute the premium in view of the changed circumstances and declined to accept the check. Thereupon, the agent advised Rogers that the payment of the premium should be withheld until the policy had been returned from the Home Office with the changes made thereon and the exact amount of the premium fixed by the Home Office. This arrangement was assented to by the applicant and the policy was returned on or about March 17, 1942. Thereafter, a new policy was issued with the incorporated changes and was forwarded to the Minneapolis office and received by it on the morning of April 16, 1942. The policy was thereafter on that day delivered to the agent who negotiated the insurance, and he called Rogers on the telephone and informed him that the policy had arrived and was in his hands. Thereupon, Rogers informed the agent that, on account of business appointments, he would be unable to come to the agent's office and that the agent should hold the policy and he would pick it up the next day. Nothing was said in this conversation about the payment of the first premium. On the evening of that same day, Rogers died of heart failure.

It is conceded for the purpose of this motion that, if Rogers had requested that the policy be sent to him, the agent would have complied with his request and would not have questioned Rogers' credit. Apparently a long friendship had existed between the agent and Rogers, and the former would have sent Rogers the policy by any method that the latter might have requested.

■ Will the admitted facts support a finding that a delivery of this policy was consummated? In determining this question, we must consider the situation as it was, not what it might have been, or could have been if the parties had entered into different arrangements. The sending of the policy by the defendant company to the Minneapolis office was not unconditional. There was no agreement between the agent and Rogers as to credit or extending the time of the payment of the first premium by a promissory note or otherwise. True, the agent would probably have granted any reasonable request in this regard, but the inescapable fact is that no request for credit had been made. It follows, therefore, that the policy was delivered by the defendant to its agent with the condition that it should not become effective until it was delivered to Rogers and the first premium had been paid. Such was the original contract between the parties as evidenced in the application and that contract had never been changed or modified. Moreover, there are no circumstances that would even remotely justify the view or the conclusion that the terms and conditions of the original contract had been waived by the parties.

It is recognized by the plaintiff that the first contract of insurance which was tendered to Rogers in March, 1942, never became effective. Plaintiff's right of recovery is based exclusively on the contract of insurance which was delivered to the agent on April 16, 1942. It seems clear, therefore, that there was no intention to deliver that contract until the next day when Rogers intended to call at the agent's office. There was no act before Rogers' death on the evening of April 16th which evinces any intent or purpose on the part

of the defendant company to part with the control of the policy. A conditional delivery to the agent is not delivery to the applicant. It is to no purpose to delve into what might have happened if Rogers had not died but had picked up the policy as he had planned on the next day. We are bound to consider, and are limited to, the status of the contract and the arrangements between the parties which existed prior to the death of the insured.

However, if a delivery of this policy, constructive or otherwise, could be spelled out from the situation presented herein on any possible theory, there appears to be an utter absence of any compliance with the provision of the contract which requires the payment of the first premium as a condition precedent to the effectiveness of the contract of insurance. Not only had there been no payment or acknowledgment of the first premium, as the contract required, but there was no meeting of the minds as to any change or modification of this provision prior to the death of the applicant. The views stated herein find support in the following decisions: Sawyer v. Mutual Life Ins. Co., 166 Minn. 207, 207 N.W. 307; Zemler v. New York Life Ins. Co., 177 Minn. 273, 225 N.W. 81; Allen v. Metropolitan Life Ins. Co., 179 Minn. 545, 229 N.W. 879; Bowen v. Prudential Ins. Co. of America, 178 Mich. 63, 144 N.W. 543, 51 L.R.A.,N.S., 587; Braman v. Mutual Life Ins. Co., 8 Cir., 73 F.2d 391.

Reference is made by the plaintiff to certain cash reserves or dividends which Rogers had with the defendant company in connection with other policies. It also appears that he had prepaid a premium on another policy. There is, however no suggestion that there was any understanding or agreement between the parties that such credit should be utilized in liquidating any amount due on the policy in question. Certainly, in absence of authority, express or implied, from Rogers to utilize such credit as payment of the first premium on a policy which he had not received, no duty rested upon the defendant company with respect thereto.

It follows, therefore, that, as a matter of law, the contract of insurance never became operative and the defendant is entitled to judgment that plaintiff take nothing by her action and that the same be dismissed. It is so ordered. An exception is reserved to the plaintiff.