NATIONAL UNION FIRE INSURANCE CO. *v.* AVANT.

Opinion delivered January 26, 1925.

1. INSURANCE—ENFORCEMENT OF PROVISIONS OF POLICY.—In the absence of any proof of fraud in the insertion, in a policy insuring a motor car, of a loss payable clause expressly made part of such policy and attached thereto at the time of its issuance, its provisions must be given full force and effect as part of the contract, though insured did not examine them.

2. INSURANCE—PROMISSORY WARRANTIES.—Provision of a loss payable clause invalidating the policy if any of insured's notes for the purchase price of an insured automobile should not be paid within 10 days after maturity, *held* a promissory warranty.

3. INSURANCE—FORFEITURE FOR FAILURE TO PAY NOTES AT MATURITY.—A provision in a policy insuring an automobile invalidating the policy if the insured failed to pay the purchase notes within 10 days after maturity means the time originally fixed by the parties or as subsequently extended by them.

4. INSURANCE—CHANGE IN PURCHASE NOTES.—A provision in a policy of insurance of an automobile invalidating the policy if any change is made in any of the purchase notes means any change detrimental to the insurer.

5. INSURANCE—CHANGE IN PURCHASE NOTES.—Where insured had paid off four-sevenths of his notes given for purchase of insured automobile and the dealer extended the time of payment of part of the unpaid purchase notes, such extension was not a material change within a provision of the loss payable clause invalidating the policy if any change was made in the notes.

6. INSURANCE—CONSTRUCTION OF POLICIES.—While the courts may not arbitrarily disregard limitations on the insurer's liability expressed in the policy, they will look through the whole contract for the intention of the parties and give it such construction as will give it a reasonable intendment, and will relieve against forfeitures if consistent with the general intent expressed in the policy.

Appeal from St. Francis Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Mann & Mann,* for appellant.

An insurance company has the right to fix the terms and conditions upon which it would insure property. 62 Ark. 348; 65 Ark. 295. A "rider" or mortgage clause is a part of the policy when attached to the policy at the time of delivery. 30 L. R. A. 636; 153 N. C. 285;

69 S. E. 214; 138 A. S. 665. In the absence of fraud, a person executing a written contract is bound by its provisions. 133 N. Y. 356; 28 A. S. R. 645; 43 Kan. 15; 19 A. S. R. 118; 71 Mich. 414; 15 A. S. R. 275; 69 Tex. 353; 5 A. S. R. 63. The extension of the time of the payment of the notes was a breach of the warranty and therefore voided the policy. 119 Ark. 597; 72 Ark. 47; 77 Ark. 57; 152 Ark. 65; 153 Ark. 156; 72 N. J. L. 289; 3 L. R. A. (N. S.) 107; 125 Ark. 93; 79 Tex. 23; 11 L. R. A. 293; 111 Ark. 167; 120 Fed. 916; 61 L. R. A. 137; 69 Ark. 295; 171 Mo. 143; 71 S. W. 160; 94 A. S. R. 778; 53 Ark. 53; 58 Ark. 276; 62 Ark. 276.

*S. S. Hargraves* and *John M. Prewitt,* for appellee.

Any ambiguities in an insurance policy must be most strongly construed against the insurance company. 50 Am. St. Rep. 832; 22 Am. St. Rep. 324; 25 Am. St. Rep. 773; 65 Am. St. Rep. 264; 69 Am. St. Rep. 134; 77 Am. St. Rep. 129. Forfeitures are not favored, and should not be enforced by the courts unless compelled to do so. 73 Am. St. Rep. 532; 78 N. W. 300; 45 N. W. 171; 83 N. W. 78. Stipulations and conditions in policies of insurance are to have a reasonable intendment and are to be construed, if possible, so as to avoid forfeitures and to advance the beneficial purposes intended. 97 Ga. 44; 69 Am. St. Rep. 143; C. & M. Digest, § 6148.

WOOD, J. This is an action by the appellee on a fire insurance policy issued to the appellee by the appellant, in which the appellant undertook to indemnify the appellee against loss or damage by fire to a seven-passenger touring car. The car was totally destroyed by fire while the policy was in force, and the appellee alleged that he had fully complied with the terms of the policy on his part, and prayed judgment in the sum of $500 and for penalty and costs.

The appellant admitted the issuance of the policy and the loss, but set up in defense that the policy contained a loss-payable clause in favor of the mortgagee of the car, Karakoffe Motor Company, which clause con-

tained a promissory warranty or condition that the policy should be wholly void if any of the notes due the mortgagee should not be completely paid on or before ten days after the maturity thereof, or if any change be made in any of the notes representing the incumbrance otherwise than by the payment thereof. The appellant alleged that, at the time the car was destroyed by fire, said notes due the mortgagee were past due and unpaid for more than ten days after maturity, and therefore the policy was void as to the appellee. Appellant further alleged that the mortgagee had been paid the amount of appellee's indebtedness to it.

The appellee testified, among other things, as follows: "I paid a premium of $14.75 for the policy. When the notes became past due I had made arrangements with the Karakoffe Motor Company about when I was to pay them. This was before the car burned. I did not tell the insurance people anything about these arrangements made with the Karakoffe Motor Company, until after the car burned. I did not notify them of the arrangements to extend the notes, at the time they were made. I notified them, after the car had burned, to collect the money." The appellee identified and introduced the policy which recites that, in consideration of the warranties and the premium mentioned, it insured the automobile described therein to an amount not exceeding the amount specified therein.

Under the title "warranties" in the policy, the policy contains the recital that "the following are statements of facts known to and warranted by the assured to be true, and this policy is issued by the company relying upon the truth thereof." Then follows, among other things, a loss-payable clause, in which it is recited that the appellee owed a balance on the purchase price of the automobile of $350, evidenced by seven notes of $50 each, payable on the 22d day of each month, beginning with July, 1922, and reciting that the policy "shall be wholly void if any of such statements is inaccurate in any respect, or if any change is made in any of the

notes representing said indebtedness or incumbrance otherwise than by payment thereof. * * * Or if any of said notes shall not be completely paid and the indebtedness represented wholly discharged on or before ten days after maturity thereof, without grace.'' There was the further provision in the loss-payable clause to the effect that the interest of the owner of the notes only shall not be invalidated by the failure of the assured to pay any of the notes within the time specified, and, in such case, the liability of the company under the policy shall be to the Karakoffe Motor Company only, and limited to the amount of the principal and interest then unpaid on said notes. There is a further provision to the effect that the policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or indorsed hereon, and that the insured agrees that its terms embody all agreements then existing between himself and the company.

The testimony on behalf of the appellant was to the effect that the Karakoffe Motor Company sold the automobile to the appellee, the entire consideration being the sum of $850. The company took a mortgage for the balance due on the purchase money, $350, evidenced by notes in the sum of $50 each, payable in seven installments. The first one or two notes were paid as they fell due. At the time the car burned three of the notes were unpaid. The company extended the time for payment of one or two of the notes, and did not notify the insurance company of the extension. The insurance company inserted a loss-payable clause in the policy at the time it was issued. The insured knew that such clause was in the policy. The premium of $14.75 was paid, and carried the policy for a year. The premium was not reduced by reason of the fact that the loss-payable clause was inserted.

The court gave instructions as to the burden of proof and the credibility of witnesses, and refused to grant appellant's prayer for instructions as follows:

"1. The jury is instructed to return a verdict for the defendant.

"2. You are instructed that, unless you find by a fair preponderance of the evidence that the plaintiff, Lee Avant, paid the indebtedness of $350 owed to Karakoffe Motor Company, as the same became due and payable, you will find for the defendant.

"3. You are instructed that, under the terms of the policy, the plaintiff agreed to pay $50 a month on the 22d day of each month, beginning July, 1922, to the Karakoffe Motor Company, and agreed that the policy would be wholly void if these notes were not paid as due, or if any change is made in any of said notes, you are instructed that if the notes were not paid as they matured, or if any extension were granted on any of the notes, the policy is void as to the plaintiff, and you will find for the defendant."

The appellant duly excepted to the ruling of the court in the refusal of these instructions.

The jury returned a verdict against the appellant for the amount of the policy, less the amount paid the Karakoffe Motor Company, in the sum of $340.56. The court entered a judgment in favor of the appellee for that sum, from which is this appeal.

The policy, according to its recitals, was issued "in consideration of the warranties and premium hereinafter mentioned." Under the title "Warranties" the loss-payable clause is expressly referred to. These and other references elsewhere in the policy expressly make the loss-payable clause a part of the policy, and the undisputed evidence shows that the mortgage or loss-payable clause was attached to the policy at the time it was issued, and that the insured knew that it was so attached. In the absence of any proof of fraud in the insertion of this loss-payable clause, it must be considered a part of appellee's contract of insurance, and its provisions given full force and effect as such, even if the appellee had not examined these provisions. *Lancaster* v. *Southern Ins. Co.*, 153 N. C. 285; *Quinlin* v. *P. & W. Ins. Co.*, 133 N. Y. 356-364; *Cleaver* v. *Ins. Co.*, 171 Mich. 414-417; *Morrison* v. *Ins. Co. of N. A.*, 69 Tex.

353. See also *Colonial & U. S. Mortgage Co.* v. *Jeter,* 71 Ark 185.

In 14 R. C. L., at page 1082, § 260, a promissory warranty is defined to be "an absolute undertaking by the insured, contained in a policy or in a paper properly incorporated by reference, that certain facts or conditions pertaining to the risk shall continue, or that certain things with reference thereto shall be done or omitted." According to this definition, the clauses "or if any change is made in any of the notes," etc., "or if any of said notes shall not be completely paid and the indebtedness represented wholly discharged on or before ten days after maturity thereof without grace," etc., are promissory warranties.

The crux of the case is whether or not these warranties are violated by any change in, or by the nonpayment of, some of the notes at the time they were due, or within the ten days of grace thereafter, as specified in the warranties. The words "maturity thereof without grace" should be construed as meaning the time specified by the parties to the mortgage when the notes should be paid, and if, when the notes became due, the mortgagee extended the time for their payment, then the time fixed by the extension agreement for the payment of the notes would be the time of maturity of such notes. The words in the clause, "if any change is made in any of the notes representing said indebtedness or incumbrance," necessarily meant some change that would be detrimental to the insurer. The parties to the contract of insurance could not have meant that immaterial changes, or changes that did not affect the risk, were included in the contract. See *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. 528; *Mutual Reserve Fund Life Insurance Co.* v. *Farmer,* 65 Ark. 581; *Des. Moines Life Ins. Co.* v. *Clay,* 89 Ark. 230.

Under the construction we give the policy, the extension of the time for the payment of the notes was not a change in the notes, but, if so, certainly not a material change. So far as the insurer was concerned,

its purpose was to preserve the conditions that existed at the time of the issuance of the policy, and to have the policy so framed that it would be warranted against any change in the notes representing the indebtedness that would affect the risk to its prejudice.

Now, the undisputed testimony shows that the conditions surrounding the parties to the contract when it was entered into were not changed to the prejudice of appellant by the agreement for the extension of the time for the payment of the notes between the mortgagee and the appellee. On the contrary, the mortgage debt at the time of the fire had been reduced by payments from the sum of $350 to the sum of $160. It is a well-settled principle in the law, and one often announced by this court, that forfeitures are not favored, and slight circumstances will be seized upon to avoid them, and any ambiguous provisions, especially in contracts of insurance, must be construed most strongly against the insurance company, because it prepared the policy. *Sun Ins. Co.* v. *Jones,* 54 Ark. 376; *Ark. Fire Ins. Co.* v. *Wilson,* 67 Ark. 553; *Hope Spoke Co.* v. *Maryland Casualty Co.,* 102 Ark. 1; *Monongahela Ins. Co.* v. *Batson,* 111 Ark. 167; *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174.

As is well said in *Clay* v. *Phoenix Ins. Co.,* 97 Ga. 44-52, "courts are not at liberty to arbitrarily disregard reasonable limitations imposed upon the liability of insurance companies under policies of insurance, by stipulations and conditions therein expressed; but, in the construction of such policies, and such conditions and stipulations, the courts will look through the whole contract to the real intention of the parties at the time of the execution of the instrument, and give to it such construction as will impute to them a reasonable intendment, and such construction as will relieve against forfeitures, if that construction be consistent with the general intent expressed in the policy." *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. *supra.*

If the appellant intended that the language of the warranty should embrace immaterial as well as

material changes, it should have so declared in the contract, and, if it intended that there should be no extension of the time for the payment of the notes beyond the due date and the ten days thereafter specified, it should have in plain terms so declared. In that event, nothing would have been left for construction, but, under the terms of the policy and the undisputed testimony, we are convinced there are no errors prejudicial to the appellant in the rulings of the trial court, and that there has been a substantial compliance with the terms, conditions and warranties of such policy upon the part of the assured.

The judgment is therefore affirmed.